**Edwin P. WILSON, Appellant,**

v.

**Barbara H. WILSON, Appellee.**

**No. 00–CV–1325.**

District of Columbia Court of Appeals.

Submitted Oct. 9, 2001.

Decided Nov. 1, 2001.

---

Edwin P. Wilson, pro se.

Paul Rosenzweig, was on the brief for appellee.

Before FARRELL, RUIZ, and REID, Associate Judges.

FARRELL, Associate Judge:

Appellant (hereafter Mr. Wilson), a federal prisoner serving a life sentence, contends that the trial court erroneously dismissed for lack of personal jurisdiction, and without allowing discovery, his suit against his former spouse (Mrs. Wilson) which alleged that she had converted or failed to account for certain jointly owned personalty and a portion of proceeds from the sale of their townhouse in the District of Columbia. We agree that dismissal was premature, and therefore vacate and remand the case for further proceedings.

### I.

Mr. Wilson's *pro se* complaint alleges that he has been a permanent resident of the District of Columbia since 1980, although he has been in federal custody since his arrest (and conviction for certain crimes) following his return from overseas in 1982. According to the complaint, he owned a property in the District of Columbia which served as an office and residence and contained office furniture, equipment, and a law library valued altogether at over $600,000. Following his divorce from Mrs. Wilson in 1980 (he later corrected this to 1981), he filed for bankruptcy and a trustee was appointed to manage his estate. Mrs. Wilson was allowed to "manage[ ] her one half regarding the distribution of the estate's assets," and eventually all of the estate's properties were liquidated, including the District of Columbia office/residence. In connection with the sale of this property—Mr. Wilson alleged—Mrs. Wilson "received undivided real estate commissions" representing an asset to the estate, and denied to the couple's two children "any legal or equitable benefits occurring from the division of the estate." As relief, the complaint asked that she be required to account for all property "sold and retained by her" as a result of the sale, and to share with the children "all personal and real property . . . represented by furniture, paintings[,] . . . antiques" and other property.

Mrs. Wilson filed no answer but instead moved to stay discovery and dismiss for lack of subject matter and personal jurisdiction.[1] After the motion to stay was granted, Mr. Wilson filed a *pro se* opposition to the motion to dismiss. In it, as relevant here, he asserted that he and Mrs. Wilson had jointly owned the District of Columbia property—"a townhouse/office"—from approximately 1975 until it

---

1. Mrs. Wilson acknowledged service of the complaint by responding in this manner.

was sold as part of the bankruptcy liquidation in about 1985. Mrs. Wilson "was co-owner, operator and profited by business activity at the location." Specifically, from 1975 until 1983, and particularly while Mr. Wilson had been "working overseas," Mrs. Wilson "supervised and administered the property, paid bills, [and] received a majority of income from it [as well as] other property she supervised until all the real property was sold by [the] trustee." [2]

Mr. Wilson repeated and elaborated upon the allegation that his former wife had committed "maladministration and illegal acts of settling the plaintiff's estate." Specifically, he claimed that she had

(a) "removed some $40,000 of valuable furniture from the [District of Columbia] location after or before it was sold";

(b) "removed a valuable law library costing some $20,000 [from that property] and failed to divide the income with the estate or the plaintiff"; and

(c) "fail[ed] to properly supervise the sale of the . . . Washington, D.C. property in cooperation with the trustee and distribute the proceeds to the estate." In particular, she had "fail[ed] to divide real estate commissions on the property" which she had received personally in connection with the sale.

Mr. Wilson asked for discovery concerning these allegations, having earlier submitted interrogatories (contrary to the stay order) that asked Mrs. Wilson to "[f]urnish records of sale or retention by [her]self of all . . . real and personal property as a result of [the] . . . division of property by the . . . bankruptcy proceedings."

The trial court dismissed the suit for lack of personal jurisdiction, without explanation other than a reference to Mrs. Wilson's motion.

## II.

Mrs. Wilson contends that, on its face, Mr. Wilson's complaint was insufficient to establish personal jurisdiction over her in that it alleged virtually no activity by her within the District of Columbia. Mr. Wilson admitted that she resided in Virginia at all relevant times, and did not dispute that the bankruptcy had been conducted by the federal court in Virginia; the complaint merely alleged that she had failed to account for the sale or retention of property, much or most of it in Virginia, arising from the parties' divorce (itself in Virginia) and the subsequent bankruptcy.

We do not have to decide whether the complaint itself was enough to establish personal jurisdiction. Super. Ct. Civ. R. 15(a) permits a party to "amend the party's pleading once as a matter of course at any time before a responsive pleading is served." A motion to dismiss is not a responsive pleading for purposes of the rule. See Sonneville v. Stedef, Inc., 449 A.2d 1087, 1089 (D.C.1982). Thus, since Mrs. Wilson had not filed an answer, Mr. Wilson was free to amend his complaint once without leave of court to add allegations tending to show personal jurisdiction. His opposition to the motion to dismiss in effect did so. See Industrial Bank of Wash. v. Allied Consulting Servs., 571 A.2d 1166, 1167–68 (D.C.1990) ("[P]leadings should be liberally construed in favor of the pleader." (quoting Seek v. Edgar, 293 A.2d 474, 476 (D.C.1972))). See also MacLeod v. Georgetown Univ. Med. Ctr., 736 A.2d 977, 980–81 (D.C.1999) (recognizing that "[i]n matters involving

---

**2.** As the motion to dismiss had pointed out, the bankruptcy resulted in the sale of additional properties which the couple owned in Virginia.

pleadings, *pro se* litigants are not always held to the same standards as are applied to lawyers," and further acknowledging "the 'handicaps [that] ... detention necessarily imposes upon a [prisoner] litigant'") (citations omitted).

■ Viewing the allegations in the complaint and the opposition together, we hold that they were sufficient to permit Mr. Wilson to conduct discovery in an attempt to confirm jurisdiction over Mrs. Wilson. D.C.Code § 13–423(a)(1) (1995) allows jurisdiction in the District over a person "as to a claim for relief arising from the person's ... transacting any business in the District of Columbia." We have held that "[e]ven a small amount of in-jurisdiction business activity is generally enough to permit the conclusion that a nonresident defendant has transacted business here ." *Environmental Research Int'l, Inc. v. Lockwood Greene Eng'rs,* 355 A.2d 808, 811 (D.C.1976) (en banc) (quoted in *Shoppers Food Warehouse v. Moreno,* 746 A.2d 320, 331 (D.C.2000) (en banc)). The allegations concerning Mrs. Wilson meet this test. In essence, Mr. Wilson alleged that she had jointly owned and managed an office operating from a townhouse in the District for up to eight years, receiving "a majority of [the] income" or at least "profit[ing]" from the "business activity" conducted there. Further, the allegations reveal a "discernible relationship" between her ownership and management of the property and the tortious conduct alleged, *Trerotola v. Cotter,* 601 A.2d 60, 64 (D.C. 1991); *see Shoppers Food Warehouse,* 746 A.2d at 336, namely, that she converted

furniture and the library from the townhouse to her own benefit and, given leave by the bankruptcy trustee to "manage" her portion of "the distribution of the estate's assets," took part in the sale of the property and in doing so retained for her own benefit real estate commissions from the sale. Whether any of these allegations can be proven remains to be seen, but as alleged they demonstrate a sufficient nexus between Mrs. Wilson and the District of Columbia to justify discovery on whether personal jurisdiction over her would comport with basic fairness. *See id.* at 329 ("[S]ection 13–423(a)(1) is coextensive in reach with the personal jurisdiction allowed by the due process clause."). *See also Eric T. v. National Med. Enters., Inc.,* 700 A.2d 749, 759 n. 21 (D.C.1997) (citation omitted) (" 'A plaintiff faced with a motion to dismiss for lack of personal jurisdiction is entitled to reasonable discovery.' ").[3]

Mrs. Wilson argues that whatever may have been her involvement with the District of Columbia property in 1985 or earlier, that is a long time ago and she is not alleged to have had any additional contact with the District, residential or otherwise, since that time. This argument, we think, goes to any defense of statute of limitations or laches that Mrs. Wilson may or may not have should she have to answer the suit.[4] Regarding personal jurisdiction, the complaint could not be dismissed properly without affording Mr. Wilson discovery on his allegations of tortious conduct in connection with Mrs. Wilson's management and sale of the office in the District

---

3. Discovery may also shed light on whether long-arm jurisdiction can be asserted over Mrs. Wilson for having had "an interest in, using, or possessing real property in the District of Columbia." D.C.Code § 13–423(a)(5) (1995).

4. At least on its face, D.C.Code § 12–302(a)(3) (1995) treats Mr. Wilson as "disab[led]" by his imprisonment, so that his right of action would not accrue until his release from imprisonment.

of Columbia.[5]

*Reversed and remanded.*

5.   The trial court did not reach Mrs. Wilson's claim that it lacked subject matter jurisdiction, predicated chiefly on the fact that in the original complaint Mr. Wilson alleged no personal injury to himself but rather claimed that Mrs. Wilson's maladministration of the estate had denied benefits to the couple's adult children.   We choose not to decide this issue without benefit of consideration by the trial court, but note that in opposing the motion to dismiss, Mr. Wilson sought to clarify his position by asserting that, while his "ultimate objective" was to "secure funds from the defendant [to] ... relieve the ... hardship" of at least one of his "dependent[s]," the alleged injury had been to his own interest in the bankruptcy estate.