**Luella S. CHRISTOPHER, Appellant,**

v.

**Celestin J.R. AGUIGUI, Appellee.**

No. 00–FM–976.

District of Columbia Court of Appeals.

Argued July 17, 2003.
Decided Aug. 14, 2003.

Donald E. English, Jr., with whom Gregory S. Lewis was on brief, Washington, for appellant.

Mary Ellen Flynn, with whom Daniel A. Katz was on brief, for appellee.

Before SCHWELB and WASHINGTON, Associate Judges, and KERN, Senior Judge.

WASHINGTON, Associate Judge:

Appellant, Ms. Luella S. Christopher, challenges the trial court's termination of a 1981 District of Columbia Child Support Order and Wage Withholding Order. The order was terminated *nunc pro tunc* to November 18, 1987[1] after the trial court

---

1. Judge Wright's order reads: "*Halo v. Halo* authorizes and, in fact, requires termination of the D.C. Child Support Order and the Wage Withholding Order *nunc pro tunc* to the date of enrollment on November 18, *1997.*" (Emphasis added). The Circuit Court for Prince George's County, Maryland ("Prince George's County"), however, entered its order

determined that a Maryland court modified the 1981 order, thus making the District of Columbia's Order unenforceable. After reviewing the record on appeal, we must remand the case to the trial court for further proceedings consistent with this opinion.

## I.

This case has a long and complicated procedural history beginning in 1980 and it is imperative to understand its history to put the current dispute into context. On September 12, 1980, Ms. Luella S. Christopher ("Ms.Christopher") gave birth to a daughter, Sylvana Juliet Christopher. In February 1981, shortly after her daughter's birth, Ms. Christopher filed a petition in the District of Columbia Superior Court to establish paternity and to provide support. Following a hearing before Judge Fred McIntyre, the trial court determined that Mr. Celestin J.R. Aguigui ("Mr.Aguigui") was the child's father. Following that declaration, the parties stipulated that Mr. Aguigui was to pay $500 a month in child support commencing September 1, 1981. Following this agreement, the District of Columbia began issuing wage withholding orders to Mr. Aguigui's employer. At some point in 1984, Mr. Aguigui left his employment and the monthly child support payments to Ms. Christopher ceased.

Throughout the next few years, arrears in the amount of approximately $18,825 accrued and went unpaid.

Finally, in July 1987, Ms. Christopher filed a motion in the Circuit Court for Prince George's County to enroll and enforce the District of Columbia Child Support Order since all parties were currently living in Maryland. A hearing was held on September 15, 1987, and Master Arnold L. Yochelson, in Domestic Relations Causes, recommenced that the order of the District of Columbia Superior Court be enrolled and enforced and that arrears be assessed. A short order, which appears to adopt Master Yochelson's recommendations, was signed by Judge David Gray Ross. Following Master Yochelson's recommendations, but prior to entry of the court order, Mr. Aguigui filed, in the Circuit Court for Prince George's County, a Petition for Modification of the Child Support Order. Mr. Aguigui's primary contention was that his income was substantially less than it was when the original District of Columbia Child Support Order was issued. Following hearings in the Circuit Court for Prince George's County, Master Yochelson recommended that Mr. Aguigui's child support obligation be reduced "from $500.00 per month to $300.00 per month ... pendente lite, accounting from the 1st day of February, 1988."[2]

on November 18, *1987*. We must assume this is simply a typographical error.

2. Although Master Yochelson's recommendations were not part of the original record, we may take judicial notice of the prior proceedings and orders. "Judicial notice may be taken at any time, including on appeal." *United States v. Burch*, 169 F.3d 666, 671 (10th Cir.1999); *see also Ieradi v. Mylan Lab. Inc.*, 230 F.3d 594, 598 n. 2 (3d Cir.2000) (noting that an appellate court could take judicial notice of a newspaper article); *accord* Fed.R.Evid. 201(f). "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within

the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed.R.Evid. 201(b); *see also Renard v. District of Columbia Dep't of Employment Servs.*, 673 A.2d 1274, 1276 (D.C.1996). Additionally, we "may take judicial 'notice of another court's order ... for the limited purpose of recognizing the 'judicial act' that the order represents or the subject matter of the litigation and related filings.'" *Al Najjar v. Ashcroft*, 257 F.3d 1262, 1283 (11th Cir.2001) (quoting *In re Delta Resources, Inc.*, 54 F.3d 722, 725 (11th Cir.1995)). In this case, we take judi-

These recommendations were adopted by a trial judge in an order issued on February 11, 1988. However, it is unclear whether the subsequent order from the trial judge adopting the Master's recommendations intended the modification to be *pendente lite* or permanent.

Sometime after the February 1988 order, Mr. Aguigui began working in the District of Columbia. In September 1988, after being notified of Mr. Aguigui's new employment by Ms. Christopher, the Superior Court issued a notice to Mr. Aguigui's new employer to garnish his wages at a rate of $500 a month plus $125 for arrearage. This amount was based upon the *original* District of Columbia Child Support Order and not the Maryland order. After being notified that the District of Columbia court had filed a wage lien, the Circuit Court for Prince George's County issued the following Memorandum:

> It has come to the Court's attention that the defendant is working in the District of Columbia and the District of Columbia Court has now filed a wage lien, thus rendering the issues in the instant case moot. Therefore, the case is hereby dismissed. All issues to be determined by the Court of original jurisdiction.

This memorandum was signed by Maryland Circuit Court Judge Graydon S. McKee, III on or around October 13, 1988 and filed on October 21, 1988. Essentially, this Memorandum appears on its face to dismiss the case and all issues surrounding the case. However, it is a "Memorandum," and the term "Order" does not appear in either the heading of the court document or in the body. Notwithstanding the issuance of this Memorandum in Maryland, which appears to dismiss the case, a Consent Withholding Order was subsequently signed by a different trial judge of the Circuit Court for Prince George's County. This Consent Withholding Order was filed on November 3, 1988, after the dismissal, and reflected a withholding of $300 a month for child support and an additional $200 a month towards the arrearage. However, this Consent Withholding Order contained only the signatures of the trial judge, the Master, and Mr. Aguigui, and had no indication that Ms. Christopher consented.

Despite this Maryland order, Mr. Aguigui's employer continued to garnish his wages based upon the District of Columbia order *not* the Maryland order. There is no evidence in the record that the Maryland Office of Child Support Enforcement ever attempted to enforce the latter Maryland Consent Withholding Order. Thus, from 1988 until August 1998, Mr. Aguigui's pay was garnished based upon the *original* District of Columbia order.

In August 1998, Mr. Aguigui filed a Motion to Dismiss and/or Modify the District of Columbia Superior Court Child Support Order and Wage Withholding Order in the District of Columbia Superior Court, which was originally entered in 1981. In support of his motion, Mr. Aguigui contended that (1) both parties resided in Maryland and had done so for many years; (2) the minor child resided in Maryland; and (3) the District of Columbia Superior Court Child Support Order was enrolled in Maryland in 1987 and subsequently modified, thus the District Order was no longer in force. A hearing was held before Hearing Commissioner Hugh Stevenson on August 24, 1988. Commissioner Stevenson granted Mr. Aguigui's motion in part, concluding that under D.C.Code § 30–342.09 (1993), currently D.C.Code § 46–302.09 (2001), the Maryland order was controlling and thus

---

cial notice of the fact that Master Yochelson recommended that Mr. Aguigui's child support obligation be modified *pendent lite*. This fact has not been disputed by appellee.

the District of Columbia Order was terminated *nunc pro tunc* to February 9, 1996. Ms. Christopher filed an appeal from Commissioner Stevenson's order. On June 26, 2000, Judge Melvin R. Wright, relying on D.C.Code § 30–342.05 (1993), currently D.C.Code § 46–302.05 (2001), affirmed Commissioner Stevenson's order, concluding that based on the various Maryland orders and the consent decree, Maryland had assumed continuing, exclusive jurisdiction over this case and thus the District of Columbia Order was terminated *nunc pro tunc* to November 18, 1987, the date of the enrollment of the District of Columbia Order in Maryland. Ms. Christopher now appeals.

## II.

On appeal, Ms. Christopher raises numerous issues. Specifically, Ms. Christopher contends that the Maryland Courts never validly modified the District of Columbia order in such a manner as to divest the District of Columbia of jurisdiction over the case and issues. Thus, this case turns on the legal effect of the various orders issued by the Circuit Courts in Maryland. After reviewing the record, however, we cannot address the merits of appellant's claims and must remand the case for further fact finding.

### A. Interpreting the Various Maryland Orders

In this case, the trial court was faced with numerous orders from Maryland, and as already noted, the legal effect of each order is critical to our determination of the issues on appeal. We will discuss each in turn. First, the Order of February 11, 1998, adopts the recommendations of Master Yochelson and reduces the child sup-

port obligation from $500 to $300 a month. As already noted, Master Yochelson recommended a *pendente lite* modification of child support. It is unclear on the face of the February 11th Order whether the trial court adopted the recommendation as a *pendente lite* modification or if the order was meant to be a permanent modification of the child support obligation. This distinction is very important. Under Maryland law, some *pendente lite* orders, which by definition are temporary,[3] do not create continuing, exclusive jurisdiction in the Maryland court. MD.CODE ANN., FAMILY LAW § 10–308(e) ("Temporary Support Order.—A temporary support order issued ex parte or pending resolution of a jurisdictional conflict does not create continuing, exclusive jurisdiction in the issuing tribunal."). Thus, if this order was *pendente lite*, it was error for the trial court to rely upon D.C.Code § 46–302.07(b)(1), which states that:

(b) If a proceeding is brought under this chapter, and 2 or more child support orders have been issued by tribunals of the District or another state with regard to the same obligor and child, a tribunal of the District shall apply the following rules in determining which order to recognize for purposes of continuing, exclusive jurisdiction:

(1) If only 1 of the tribunals would have continuing, exclusive jurisdiction under this chapter, the order of that tribunal controls and must be so recognized.

For if the order was temporary, it did not give Maryland, continuing, exclusive jurisdiction and § 46–302.07(b)(1) would not apply.

The second Maryland order, the Memorandum of October 12, 1988 from the Cir-

---

3. "Pending the lawsuit; during the actual process of a suit; during litigation. Matters 'pendente lite' are contingent on outcome of litigation." BLACK'S LAW DICTIONARY 1134 (6th ed.1990).

cuit Court for Prince George's County, was given short shrift by the trial judge because he concluded that he had no real context in which to view the Memorandum. The legal effect of this Memorandum, however, is imperative in determining the outcome of the present case. An Order that is clear on its face dismissing the case completely would be given great weight if all the formalities of an Order had been followed. Although the October 12, 1988 Memorandum was entitled Memorandum, rather than Order, it clearly stated that "the case is hereby dismissed. All issues to be determined by the Court of original jurisdiction." It seems to us a leap for the trial court to conclude that there was no real context in which to view this Memorandum—it identifies a case number and states that the case is dismissed. If this Memorandum was in fact an order dismissing the case, then it is important to understand what that means. For example, if this order does in fact dismiss the case, as it appears to do, it is unclear whether that dismissal means that the prior order modifying child support is also terminated. Further, there might be a different legal effect of the dismissal if the prior child support order was permanent as opposed to *pendente lite*. It is also possible that the Memorandum was something else all together and that the prior modification order is still in effect. If that were the case, then the Maryland order controls. *See, e.g., Halo v. Halo*, 275 A.2d 543 (D.C.1971); *see also* D.C.Code § 46–302.05(c). Thus, the trial court must determine the legal effect of this Memorandum in order to properly dispose of the case.

Finally, the trial court gave great weight to the Consent Withholding Order. While it would have been proper for the trial court to give great weight to a fully executed Consent Withholding Order, the Order in this case was not signed by either

Ms. Christopher or an Agency that represented her interests. The legal effect of such an order, if any, must be determined before a court can give it any weight, let alone the great weight that the trial court accorded to the Order in this case. Furthermore, if the Memorandum of October 12, 1988 was in fact a final order dismissing the case, the legal effect of that order may preclude giving the Consent Withholding Order any weight because the Consent Withholding Order cannot serve to overrule the previous final order from another trial judge with concurrent jurisdiction. *See, e.g., Warfel v. Brady*, 95 Md.App. 1, 619 A.2d 171, 174 (1993) ("According to Maryland law, the law of the case doctrine applies to decisions finally disposing of the case.").

 While this case has a very complicated history, which spans decades and involves various orders from multiple judges from courts of two different jurisdictions, in our mobile society it is not uncommon for multiple jurisdictions to be involved in support proceedings. Therefore, to address such scenarios, the District of Columbia Code has adopted the Uniform Interstate Family Support Act ("Act"). Section 317 of the Act, codified at D.C.Code § 46–303.16 (2001), provides the trial court with a unique tool to assist in deciphering the sometimes unclear judgments, decrees and orders issued by another jurisdiction so the trial court can understand the legal effect of such judgments, decrees and orders and place them in their proper context. Understanding the legal effect of the Maryland Orders is critical in the present case. D.C.Code § 46–303.16 (2001) states:

A tribunal of the District may communicate with a tribunal of another state in writing, or by telephone or other means, to obtain information concerning the laws of that state, the legal effect of a judgment, decree, or order of that tribu-

nal, and the status of a proceeding in the other state. A tribunal of the District may furnish similar information by similar means to a tribunal of another state. The purpose of this provision of the Act is to "expedite the establishment and enforcement of a support order." UNIF. INTERSTATE FAMILY SUPPORT ACT § 317, Comment, 9 U.L.A. 235, 330 (1996). Thus, in cases like the one before us, this statute provides a means for the trial court to give proper recognition and context to orders which may not be clear on their face. If the legal effect of an order is not understood, then it is incumbent upon the trial court, when appropriate, to seek guidance from the issuing jurisdiction. Therefore, in order to properly weigh the various Maryland rulings, the trial court should have sought guidance from the Maryland court itself under D.C.Code § 46–303.16; *accord* MD.CODE ANN., FAMILY LAW § 10–329 (same).

We acknowledge, however, that in some cases, where much time has passed, this will not be an easy task. In fact, it is possible that the trial court may not be any better informed after contacting the other tribunal, than it was before. Nevertheless, in the interest of justice and fairness, we conclude that an effort must be made. Because the trial court failed to do so, we must remand the case for further proceedings.[4]

### B. The Trial Court Erred in not Addressing Ms. Christopher's Laches Argument

 On appeal, Ms. Christopher also contends that the trial court erred in not addressing her argument that Mr. Aguigui is precluded from the relief he sought based upon the doctrine of laches. While Ms. Christopher's laches argument in the trial court was not as succinct as we would expect from an attorney, we give *pro se* litigants more leniency in their pleadings. *See Wilson v. Wilson,* 785 A.2d 647, 649–50 (D.C.2001) (citing *MacLeod v. Georgetown Univ. Med. Ctr.,* 736 A.2d 977, 980–81 (D.C.1999)). After reviewing Ms. Christopher's pleadings, specifically her Opposition to Defendant's Motion to Dismiss and/or Modify, we are satisfied that she sufficiently articulated a laches defense. Thus, the trial court should have made findings, and if necessary, conducted a hearing to determine whether Mr. Aguigui was barred by laches from seeking to have dismissed a child support order that he had been complying with for over ten years. Since the trial court failed to address this defense in its Order and Memorandum Opinion, we also remand for the trial court to address this issue in the first instance. *See Levy v. Currier,* 587 A.2d 205, 211 (D.C.1991).

For the foregoing reasons, the case is remanded for further consideration consistent with this opinion.[5]

*So ordered.*

---

4. Section 46–303.16 permits the trial court to communicate with another tribunal either in writing or by telephone. We would encourage the trial court to err on the side of formality when contacting the Maryland Circuit Court. It is especially important in cases, such as this, that have spanned over two decades and where it is likely that the trial

judges who issued the original orders may not still be serving in those positions, to request clarification of the legal effect of the orders, in writing.

5. Pending resolution of this matter on remand, the judgment of the trial court remains in effect.