**Aarno O. LIUKSILA, Appellant**

v.

**Jutta STOLL, Appellee.**

**No. 03–FM–1226.**

District of Columbia Court of Appeals.

Submitted Nov. 4, 2004.

Decided Dec. 8, 2005.

---

Aarno O. Liuksila, filed a brief pro se.

Jutta Stoll, filed a brief pro se.

Before TERRY, Associate Judge, and FERREN and NEBEKER, Senior Judges.

TERRY, Associate Judge:

This case concerns a German child support order ("the German order"), issued in 1997, which was registered in the Superior Court of the District of Columbia under the Uniform Reciprocal Enforcement of Support Act ("URESA"), D.C.Code §§ 30–341.1 et seq. (1997) (revised and recodified

as the Uniform Interstate Family Support Act ("UIFSA"), D.C.Code §§ 46–301.01 *et seq.* (2001)). By the terms of that order, appellant Aarno Liuksila was directed to pay support arrears to appellee Jutta Stoll, whose daughter Liisa Stoll is the child whose support is at issue.[1] Mr. Liuksila has consistently challenged the authority of both the District of Columbia courts and the German courts to require him to pay what he owes. He has spent several years trying to avoid his child support obligations by filing repetitive and often baseless motions challenging the various orders issued by the Superior Court hearing commissioners[2] and trial judges assigned to this case. This appeal is taken from the trial court's order of August 12, 2003, directing Mr. Liuksila to pay his support arrears in full. We affirm that order.

## I

A document from the German Institute for Guardianship ("GIG"), dated August 22, 1997, states in pertinent part:

> Plaintiff prays for an order of the court that ... Defendant be directed to pay the support arrears for the Plaintiff in an amount of DM 124,550.60 = $75,841.98 for the period of February 1, 1986, until August 31, 1997. Payments are to be made to the German Institute of Guardianship. Monthly installment payments of $150.00 are granted.

The document also states that Mr. Liuksila is responsible for monthly child support payments of "DM 1,059 = $576" as of September 1, 1997.[3] Before the German order was registered in the District of Columbia, two default judgments for child support payments had been entered against Mr. Liuksila by a local court in Darmstadt, Germany, the first on March 14, 1991, and the second on July 20, 1994. In each instance, Mr. Liuksila was duly served in accordance with German law, but failed to appear in court. On February 23, 1995, the German court entered an attachment·order based on the default judgments.

Two years later, the GIG learned that Mr. Liuksila was living in Washington, D.C. Accordingly, on or about December 1, 1997, the GIG submitted the document described above to the Interstate Unit of the Office of Paternity and Child Support Enforcement of the District of Columbia, seeking registration of the support order. The registration request outlined the amount due in arrearages, as well as the amount due for future child support payments. The Superior Court then sent a notice of registration to Mr. Liuksila at his District of Columbia residence.[4]

Mr. Liuksila responded by requesting a hearing. In his request he stated that, although he had received the notice of registration in the District of Columbia, he

---

1. Liisa Stoll was born on January 9, 1984, in Washington, D.C., to appellee Jutta Stoll, who moved to Germany with her daughter after Liisa's birth. Mr. Liuksila acknowledged that he was Liisa's father in a "Deed of Acknowledgment of Paternity," dated January 14, 1991, which was filed with the Municipal Youth Welfare Office in Darmstadt, Germany. A translation of that document is included in the record on appeal.

2. Superior Court hearing commissioners are now known as magistrate judges. *See* D.C.Code § 11–1732 (2005 Supp.).

3. This document, which is part of the record on appeal, contains both the original German text and a parallel English translation. The accuracy of the translation has not been challenged.

4. The report of a private investigator showed that Mr. Liuksila owned a house on P Street, N.W., in the District of Columbia, and that he had an office at the headquarters of the International Monetary Fund, where he was employed.

had in fact moved to Finland in 1997, and merely happened to be in the District on sabbatical when he received the notice. At a hearing in March 1998, Hearing Commissioner Hugh Stevenson found that Mr. Liuksila was a resident of Finland and ruled that the Superior Court therefore lacked jurisdiction to issue a support order under UIFSA. He also held that both UIFSA and the District of Columbia's long-arm statute required at least one of the parties to be a resident of the District in order to establish jurisdiction here. Since neither Mr. Liuksila nor Ms. Stoll lived here, Commissioner Stevenson dismissed the case for lack of jurisdiction.

Ms. Stoll filed a motion for review of the hearing commissioner's ruling by a Superior Court judge, pursuant to D.C.Code § 11–1732(k); Mr. Liuksila did not oppose the motion. Upon review, Judge Russell Canan reversed the commissioner's decision in an opinion dated July 16, 1999.[5] He ruled that UIFSA does not require continuing and exclusive jurisdiction for the registration and enforcement of a foreign support order; that Mr. Liuksila had waived any claim that the German court lacked jurisdiction when he failed to contest that court's jurisdiction in his initial response; and that the Superior Court therefore had jurisdiction over him. Accordingly, Judge Canan ordered the registration, confirmation, and enforcement of the German order. Mr. Liuksila did not

appeal from Judge Canan's decision. The case was sent back to Commissioner Stevenson, who registered the German support order on August 5, 1999, as a valid court order in the District of Columbia.

On December 7, 1999, a writ of attachment was served on the Bank Fund Staff Federal Credit Union, directing it to garnish $37,607.53 from Mr. Liuksila's account.[6] In response, Mr. Liuksila filed an emergency motion to quash the writ of attachment. He argued that the amount garnished was excessive, in light of the $150 monthly installment plan set forth in the German order,[7] and that in any event he owed the child support money to the GIG, not to Ms. Stoll. Ms. Stoll in turn requested a judgment of condemnation against funds in Mr. Liuksila's bank account. At that time, Mr. Liuksila owed approximately $95,763.53 in arrears and current child support payments. Hearing Commissioner Jerry Byrd denied Mr. Liuksila's emergency motion on January 11, 2000. He stated that Jutta Stoll had been authorized by the GIG to pursue the claim and collect payments,[8] and that Judge Canan's July 1999 order had fully addressed all issues regarding the service, registration, and enforcement of the German order. Commissioner Byrd adopted Judge Canan's findings on those issues.

In response to Commissioner Byrd's order, Mr. Liuksila filed a motion entitled "Reconsideration of Motion to Quash Writ

---

**5.** Judge Canan's opinion is not in the record. Our summary of it is based primarily on Judge Puig–Lugo's later opinion of November 1, 2000.

**6.** It appears that this particular sum was garnished because it was the entire balance in the credit union account.

**7.** According to the registered German order, Mr. Liuksila owed $75,841.98 in support arrears, but the order also seems to direct that the arrearage be paid in monthly installments

of only $150. The funds were attached from Mr. Liuksila's account just five months after the support order was registered, and were clearly in excess of $150 per month. The installment plan was later questioned by this court in a Memorandum Opinion and Order filed July 13, 2003. See page 505, *infra.*

**8.** On December 21, 1999, the GIG had sent Ms. Stoll a letter stating that it had withdrawn from the matter and that Ms. Stoll was authorized to enforce the order thereafter.

of Attachment; Dismissal for Invalidity of Registered Order for Initiating Court's Lack of Personal Jurisdiction; Return of Order as Defendant Derives No Earnings or Other Income In the District; Request for Rehearing and Stay for Sixty Days in Favor of Helsinki Court; and, If Not, Removal to Federal Court." This motion, however, merely expanded upon arguments already addressed and rejected by both Judge Canan and Commissioner Byrd. Ms. Stoll opposed the motion. After further pleadings were filed, Commissioner Byrd denied Mr. Liuksila's motion to reconsider. In his order, Commissioner Byrd elaborated on the jurisdictional issues addressed in Judge Canan's opinion, made a ruling as to the proper exchange rate, rejected Mr. Liuksila's contention that the German order limited arrearage payments to $150 per month, and denied Mr. Liuksila's request to remove the action to federal court, holding that the Superior Court has exclusive jurisdiction over child support matters in the District of Columbia. Commissioner Byrd then granted Ms. Stoll's request for a judgment of condemnation.

On Mr. Liuksila's motion for review, Judge Hiram Puig–Lugo affirmed Commissioner Byrd's order denying Mr. Liuksila's motion to quash the writ of attachment, ordered him to pay attorney's fees (which Ms. Stoll had requested) because of his "repetitive," "frivolous," and "abusive" pleadings, and ordered the Clerk of the Court to refuse to accept any filing or future submission from Mr. Liuksila unless there was a written order from the court authorizing it to be filed. He remanded the issue of contempt for failure to pay child support to another judge for determination.[9]

Mr. Liuksila appealed from Judge Puig–Lugo's decision to this court, challenging the Superior Court's subject matter jurisdiction and the amount garnished from his bank account, asserting that the matter should be removed to a federal court or to a court in Finland, and arguing that Ms. Stoll had no right to enforce the judgment. In an unpublished Memorandum Opinion and Order, we held that Mr. Liuksila could not collaterally challenge the subject matter jurisdiction of the Superior Court in an appeal from the post-registration denial of a motion to quash the writ of attachment because he had failed to appeal from Judge Canan's order directing that the German order be registered and rejecting Liuksila's jurisdictional claims. Thus, we said, "the jurisdictional question was actually litigated and decided, and the judgment became final." [10] Likewise, the arguments related to removal and to Ms. Stoll's status as a litigant were barred because of Mr. Liuksila's failure to appeal from Judge Canan's July 1999 order in which they had been decided. We questioned the German order's apparent grant of $150 monthly installment payments, however, and remanded the case to Judge Puig–Lugo for further findings of fact in connection with the "meaning and purpose of [that] statement." *Liuksila v. Stoll,* No. 00–FM–1491, 830 A.2d 416 (D.C.2003) (unpublished).

On remand, Judge Puig–Lugo issued an order dated August 12, 2003, affirming

---

9. Another judge had found Mr. Liuksila in contempt on December 10, 2001. In addition, numerous bench warrants had been issued for Mr. Liuksila because he had repeatedly failed to appear in court. The contempt matter is not before us in this appeal.

10. This refers only to Mr. Liuksila's claim that the Superior Court lacked subject matter jurisdiction. There is no mention in our prior decision of any claim that the German court lacked personal jurisdiction.

Commissioner Byrd's order of January 11, 2000, which held that the arrears were due in full and not in a series of monthly $150 payments. This appeal followed.

## II

Mr. Liuksila makes several of the same arguments in this appeal that he has made—unsuccessfully—throughout the course of these proceedings. He claims that the writ of attachment should have been quashed because it failed to heed the German order's requirement for payment of arrears in monthly installments; that the German court did not have jurisdiction to enter the support order; that the German authorities failed to submit properly authenticated orders with the original filing; that the case was brought in the name of the wrong party (*i.e.*, in the name of Ms. Stoll rather than the GIG); and that the court failed to consider the "suspicious nature" of the letter from the GIG to Ms. Stoll granting her the power to enforce the support order.

Four of Mr. Liuksila's five claims can be disposed of without extensive discussion. Judge Canan's order of July 16, 1999, rejected all of Mr. Liuksila's jurisdictional claims and confirmed registration of the German order. Mr. Liuksila did not appeal from that decision. Indeed, he took no further legal action until funds were attached from his bank account, at which point he filed an emergency motion to quash the writ of attachment. The trial court denied that motion, and Mr. Liuksila ultimately appealed from that denial to this court. In our decision of July 17, 2003, we made clear that because Mr. Liuksila had failed to appeal from Judge Canan's original order, he could not, in his appeal attacking the writ of attachment, collaterally attack the jurisdiction of the German court or assert that Ms. Stoll was not the proper party to enforce the German order.

Despite this clear and unambiguous ruling, Mr. Liuksila here contests the jurisdiction of the German court and, once again, Ms. Stoll's standing as a party in the case. These arguments were without merit the first time they were presented to the trial court, and they remain meritless in this second appeal. In addition, Mr. Liuksila challenges the procedures taken by the GIG in seeking to register the German order, as well as the authenticity of the letter from the GIG authorizing Ms. Stoll to pursue the judgment. Because Mr. Liuksila did not appeal from Judge Canan's order, however, these claims are similarly barred.

 First, with regard to personal jurisdiction, Mr. Liuksila maintains that "Germany never had a jurisdictional basis for asserting a child support action against Appellant as he had never resided in Germany and never submitted to its jurisdiction." Whether the German court had personal jurisdiction over Mr. Liuksila, however, is a matter that we cannot decide, or even consider, in this appeal. Because Mr. Liuksila failed to appeal from Judge Canan's order of July 16, 1999, that decision is *res judicata* on this issue. *See, e.g., Goldkind v. Snider Brothers, Inc.,* 467 A.2d 468, 473 (D.C.1983) ("[u]nder the doctrine of *res judicata,* a prior judgment on the merits raises an absolute bar to the relitigation of the same cause of action between the original parties"). In addition, the specific language of the UIFSA statute bars consideration of this issue at this stage of the case, more than six years after Judge Canan issued his order. *See* D.C.Code § 46–306.08 ("Confirmation of a registered order ... precludes further contest of the order with respect to any matter that could have been asserted at the time of registration"). Once the Ger-

man support order was registered in the District and Mr. Liuksila failed to challenge either the jurisdiction of the German court or the validity of the order, his defense of lack of personal jurisdiction was waived, and he cannot now revive it or raise it in this appeal.[11]

▮ Second, Mr. Liuksila argues that because the GIG "failed to submit the properly authenticated orders" when it sought to register the support order in the District of Columbia, he was unable to challenge the registration until the proper documents were filed. He now maintains that this failure "require[s] dismissal of this case." But Mr. Liuksila made no such claim when the order was registered; thus he is barred from raising the argument now in this appeal. *See Carrollsburg Condominium Unit Owners Ass'n v. Anderson*, 791 A.2d 54, 59–60 (D.C.2002) (refusing to consider an argument that could have been raised, but was not, in a prior appeal). Moreover, even if the alleged defects in the filing had been properly raised earlier, Mr. Liuksila would not have prevailed. UIFSA's language on "Recognition of controlling child support order" states, in pertinent part:

A party who obtains the order and fails to file a certified copy is subject to appropriate sanctions by a tribunal in which the issue of failure to file arises. *The failure to file does not affect the validity or enforceability of the controlling order.*

D.C.Code § 46–302.07(f) (emphasis added). Thus he cannot raise this issue now, not only because he failed to raise it properly at an earlier stage in the trial court, but also because the validity of the order was not affected by the GIG's alleged failure to file certified copies.

▮ Third, Mr. Liuksila argues at great length that the proper party here is the German government, not Jutta Stoll. Because this court has already ruled in the previous appeal that Mr. Liuksila's failure to appeal from Judge Canan's order barred him from raising any claim regarding Ms. Stoll's standing,[12] further litigation of this issue is foreclosed by *res judicata*. *See, e.g., Goldkind*, 467 A.2d at 473.

▮ The only issue properly before this court, therefore, is the matter of support arrearages, which we remanded for further findings of fact in July of 2003. Mr. Liuksila argues that the writ of attachment contradicted the German order's requirement that his arrears be paid in monthly installments of $150. He takes exception to Judge Puig–Lugo's determination, on remand from this court, that the amount attached from Mr. Liuksila's bank account is proper because the arrearage is due and payable in full now, not in monthly installments. This court reviews the trial

---

**11.** Both Judge Canan and Judge Puig–Lugo addressed this issue in their respective orders and reached the same conclusion.

**12.** In our decision of July 17, 2003, we stated: While GIG submitted the German order for registration, Stoll was shown as the petitioner and the case file and documents were so captioned. She defended the jurisdiction issue before the hearing commissioner, and she took and argued the successful appeal to the trial court. Liuksila never challenged Stoll's right to enforce the German order at that time.

Indeed, he did not contest Ms. Stoll's status as the proper party until about five months after the German support order was registered, and at that time he did so only in response to the attachment of his bank account. Nor did he dispute the authenticity of the letter granting Ms. Stoll the right to pursue child support for her daughter until this appeal. Thus, as we said in 2003, his "failure to appeal [from Judge Canan's] order is ... fatal to his arguments," and we need not address them further.

court's ruling only for abuse of discretion. *See, e.g., Galbis v. Nadal,* 734 A.2d 1094, 1100 (D.C.1999) ("The trial court has broad discretion in making child support decisions. Absent a showing of abuse of that discretion, such decisions ... will not be disturbed on appeal."). Applying this standard, we hold that Judge Puig–Lugo did not abuse his discretion in ruling that Mr. Liuksila must pay the entire amount in arrears, despite the language in the GIG document indicating that he need only make $150 monthly installment payments.

On remand, Judge Puig–Lugo accepted Commissioner Byrd's conclusion that the document from the GIG was a request for relief, not an order. He held that the registered order included not only the GIG complaint requesting registration and enforcement of the previous default judgments against Mr. Liuksila, but also the default judgments themselves. The judge noted that both default judgments "indicate that the arrears owed by appellant are due immediately; there is no provision in either order allowing for arrears to be made in monthly payments." "Thus," he concluded, "it would be inconsistent to say that the GIG's request for $150.00 installment payments of the arrears should be enforced over the explicit language of the German court orders, which require Liuksila to make immediate payment of the arrears."

■ Under this court's decision in *Christopher v. Aguigui,* 841 A.2d 310 (D.C. 2003), a judge seeking to determine the meaning of an order registered under UIFSA should ordinarily conduct a thorough inquiry, including if necessary some communication with the issuing jurisdiction. As we pointed out in *Christopher,* the statute

provides a means for the trial court to give proper recognition and context to orders which may not be clear on their face. *If the legal effect of an order is not understood, then it is incumbent upon the trial court, when appropriate, to seek guidance from the issuing jurisdiction.*

*Id.* at 315 (emphasis added). In the present case, no further hearings were held on the meaning of the German order, nor is there any indication in the record that the judge sought guidance from the German authorities as to the scope of the order. But the judge's failure to conduct a more searching inquiry does not help Mr. Liuksila now. Given the lengthy history of this case, including several orders and opinions addressing the proper interpretation of the German document, and given as well Mr. Liuksila's consistent defiance in the face of multiple court orders directing him to pay child support and his insistence on bringing meritless appeals, we conclude that Judge Puig–Lugo's order of August 12, 2003, sufficiently addressed and resolved the only question that needed to be answered on remand.

Specifically, the extensive record reveals that both Commissioner Byrd and Judge Canan carefully considered the issue of payment of arrears[13] and made factual determinations that were consistent with the language of the GIG document and the established doctrine that child support payments required by a court order become vested when due, absent a modification of the order. *See, e.g., Kammerman v. Kammerman,* 543 A.2d 794, 801 (D.C. 1988). Judge Puig–Lugo was fully justified in relying on the detailed and well-reasoned findings of fact made by his colleagues, and we are satisfied that he did not in any way abuse his discretion in doing so.

13. Indeed, they considered it on multiple occasions.

The judgment of the trial court is therefore

*Affirmed.*