*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

**DISTRICT OF COLUMBIA COURT OF APPEALS**

No. 25-CV-0400

DANIELLE PENNINGTON, APPELLANT,

v.

FIRST HAND LAND, LLC, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(2019-LTB-011768)

(Hon. Shana Frost Matini, Motions Judge)

(Decided January 8, 2026)

*Danielle Pennington*, pro se.

*Daniel B. Morgenthaler* for appellee.

Before BECKWITH and DEAHL, *Associate Judges*, and RUIZ, *Senior Judge*.

DEAHL, *Associate Judge*: Danielle Pennington appealed a Superior Court order granting First Hand Land a writ of restitution. That writ permitted First Hand to evict Pennington from the property that she had owned until it was foreclosed on and sold in 2019 to First Hand's predecessor-in-interest. Pennington asked this court to enjoin her eviction pending appeal. We denied that request on May 22, 2025, and Pennington was evicted the following day.

A week later, Pennington asked us to reconsider enjoining her eviction. She argued that a federal court had already decided this property dispute in her favor via a quiet title judgment dated March 24, 2025. She attached what she purported to be an order issued by Judge Reggie B. Walton, presiding over her federal district court proceedings, which proclaimed her to be "the lawful owner of the property, free and clear of" any liens.

First Hand opposed the motion to reconsider, arguing that Pennington had "forged" the federal court order that she presented to this court as granting quiet title in her favor. First Hand noted that the purported order that Pennington submitted to this court did not appear on the district court's docket and, in fact, that court had dismissed Pennington's case. First Hand also highlighted in a subsequent filing that Pennington had submitted the same apparently forged order in a parallel Superior Court action, and that the Superior Court found the order to be "fraudulent" and "clearly false on its face" after noting: (1) the order was not reflected on the district court's docket in the case that Pennington represented it had been issued in; (2) it was inconsistent with the district court's disposition, dismissing the federal matter on March 20, 2025, four days before Pennington represented that it had granted quiet title in her favor; (3) it contained a clerk's attestation and an electronic date-stamp indicating that the order was e-filed on July 30, 2024, about eight months before the

date on which the text of the order indicated it was issued (and about a month before the district court proceedings had even begun); and (4) Pennington had apparently registered the same forged court order with the District's recorder of deeds on May 28, 2025.

We ordered Pennington to show cause why her appeal should not be dismissed as a sanction for forging the purported federal court order granting quiet title in her favor. In her response, Pennington asserted generally that "[t]he accusations of fraud made against Appellant are legally unsustainable." But she offered no explanation, aside from her apparent forgery, for how the purported federal court order came into existence. She did not dispute that the order does not appear on the district court's docket. She could not offer any innocent explanation for how that could be if the order were genuine. Nor could she explain the discrepancy between the date of issuance in the order's text and the date of the clerical attestation.

We conclude—as the Superior Court did in the parallel action, and based on judicially noticeable facts and the uncontested evidence in the record—that the order Pennington submitted to this court is plainly forged. There is no court order on the district court's docket that resembles the one Pennington has submitted to this court; that court dismissed Pennington's case and closed it before the date that appears in

the text of that apparently forged order. *See Christopher v. Aguigui*, 841 A.2d 310, 311 n.2 (D.C. 2003) ("[W]e 'may take judicial notice of another court's order for the limited purpose of recognizing the judicial act that the order represents or the subject matter of the litigation and related filings.'" (cleaned up) (quoting *Al Najjar v. Ashcroft*, 257 F.3d 1262, 1283 (11th Cir. 2001))). In addition to the discrepancies already noted by the Superior Court in the parallel action, all of which are well-founded, we note (1) that the signature block on the forged order states that Judge Walton was "[s]itting by [d]esignation in the United States Bankruptcy Court for the District of Columbia," when in fact Judge Walton was not sitting in the bankruptcy court, but acting in his role as a United States District Judge when presiding over Pennington's federal case; (2) the forged order's electronic date-stamp aligns down to the second with an order to show cause that the federal bankruptcy court had issued before Pennington appealed the matter to the district court (issued on July 30, 2024, at 12:31:22), and the computer-generated case number on the forged order— No. 24-00250-ELG—matches the case number assigned to the prior bankruptcy court proceedings as well; and (3) Pennington appealed Judge Walton's dismissal of her case on April 7, 2025, which would make no sense if Judge Walton had granted judgment in her favor as she represented.

That brings us to the appropriate sanction for Pennington's misconduct. Rule 38 authorizes this court to impose "appropriate" sanctions, including "dismissal of the appeal," on a party who "files a petition or motion that is frivolous or interposed for an improper purpose." D.C. App. R. 38. While this court has not previously articulated clear standards for when a party's litigation misconduct warrants dismissal of their appeal, *see Slater v. Biehl*, 793 A.2d 1268, 1278 n.12 (D.C. 2002) (noting the "paucity of published opinions by this court invoking Rule 38"), today we adopt the standard that we have previously applied to the Superior Court's dismissal of complaints as a sanction for misconduct. *See generally Breezevale Ltd. v. Dickinson*, 879 A.2d 957, 967 (D.C. 2005). That is, one circumstance (but not the only one) in which dismissal may be warranted as a sanction is when a party before this court has "willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice." *Id.* at 967 (quoting *Synanon Found., Inc. v. Bernstein*, 503 A.2d 1254, 1264 (D.C. 1986)).

Applying that standard, we dismiss Pennington's appeal. While dismissal is an "extreme sanction" that "should be granted only sparingly or in extraordinary circumstances," *Breezevale*, 879 A.2d at 967 (quoting *District of Columbia v. Serafin*, 617 A.2d 516, 519 (D.C. 1992)), Pennington's misconduct is extreme. *Cf.* D.C. Code § 22-722(a)(6) (defining the offense of "obstruction of justice" to include

one who "[c]orruptly . . . endeavors to obstruct or impede the due administration of justice in any official proceeding"). Pennington has submitted a blatantly forged court order to this court, which she has pressed as a standalone basis for ruling in her favor. Moreover, she has not acknowledged her misconduct, explained it, or expressed any contrition once pressed on it. Pennington's misconduct is further compounded by her submission of the same fraudulent order to the Superior Court in the parallel action and her registration of it with the District's recorder of deeds (constituting fraud, upon fraud, upon fraud).

We do not resolve whether this court must consider less severe sanctions before dismissing an appeal as a sanction for such gross misconduct, as the Superior Court is sometimes required to do when dismissing a case as a sanction. *See Perry v. Sera*, 623 A.2d 1210, 1218 (D.C. 1993) (in the context of a party violating discovery orders, court must "consider[] less severe sanctions than dismissal"). In either case, we are satisfied that no sanction other than dismissal will sufficiently deter this misconduct. Professional discipline is not an option because Pennington is not an attorney whom we can discipline as a member of the bar. Monetary sanctions are not a good option because Pennington has been proceeding *in forma pauperis* since September 2024, and describes herself as homeless in her pleadings, suggesting that she might view a hefty financial sanction as harsher than dismissal

or, more likely, that she simply could not pay it. *See Slate v. ABC, Inc.*, 941 F. Supp. 2d 27, 52 (D.D.C. 2013) (making similar points in dismissing a pro se party's action as a sanction for the submission of fabricated evidence), *aff'd* 584 Fed. Appx. 2 (D.C. Cir. Nov. 18, 2014) (per curiam). Her seeming inability to pay aside, we doubt any monetary sanction could adequately deter misconduct of this gravity; the litigant who can afford to pay staggering monetary sanctions does not have a license to try and defraud this court so long as they are willing to pay for their transgressions if they are found out. And simply excluding the forged order from our consideration is plainly not a sufficient deterrent either—that would leave Pennington in no worse position than if she had forgone her forgery entirely. That would serve as no deterrent at all to litigants falsifying evidence if the worst that could happen is they get caught and it gets discounted.

We are cognizant that Pennington is a pro se party so that we might be more forgiving of certain missteps than we would be if she were represented by counsel. *See In re Harrington*, 283 A.3d 714, 720-21 (D.C. 2022) (declining to hold a pro se party to the same standard as an attorney in determining whether an appeal is frivolous). But one does not need a law degree or a bar license to know that forging court orders and submitting them in official court proceedings is egregious

misconduct.[1]  *See Slate*, 941 F. Supp. 2d at 52 ("Litigants must know that the courts are not open to persons who would seek justice by fraudulent means." (internal quotation marks omitted)).

This appeal and Pennington's pending motions are therefore dismissed as a sanction for Pennington's litigation misconduct.

*So ordered.*

---

[1] While Pennington's forgery does not bear any hallmarks of being generated with artificial intelligence, we note that recent advancements in AI have made it increasingly quick and easy for parties to create convincing forgeries. *See generally* Perry Carpenter, *AI, Deepfakes, and the Future of Financial Deception* (written testimony before the Securities & Exchange Commission Investor Advisory Committee, March 6, 2025), *available at* https://www.sec.gov/files/carpenter-sec-statements-march2025.pdf; https://perma.cc/Y3YN-4WZF.  Courts must react with increasing vigilance to ferret out those forgeries, and with no tolerance when they are brought to light.